## Bentley et al. v. Commonwealth.

(Decided May 15, 1931.)

JOHN W. CAUDILL for appellants.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

The appellants, Elcaney and Noah Bentley, together with one Hall, were jointly indicted in the Knott circuit court and accused of unlawfully having in their possession an illicit moonshine still and parts thereof for the unlawful purpose of manufacturing intoxicating liquors. At their joint trial Hall was acquitted, but the appellants were convicted. Their motion for a new trial was overruled, and they have filed a transcript of the record in this court with a motion for an appeal from the verdict and judgment rendered thereon, and their counsel relies upon two alleged errors committed by the trial

court, and which are, as he contends, sufficiently prejudicial to authorize a reversal of the judgment, and they are: (1) That the evidence of the commonwealth, which it contends was sufficient to authorize a conviction of appellants, was incompetent and should have been excluded, because obtained by a search warrant based upon a wholly insufficient affidavit; and (2) that the evidence, if competent, is insufficient to sustain the conviction.

The affidavit, the sufficiency of which is denied in error 1, was made by a deputy constable in Knott county, who with some other officers went to the home of Hall on the late afternoon of March 10, 1929, and proposed to search his premises. He inquired if they had a search warrant, and on being informed that they did not he declined to give his consent, whereupon one of the posse secretely guarded Hall's residence while another went for a search warrant; but he was late in obtaining it, and it was not attempted to be executed until the next morning. The questioned affidavit, after stating affiant's belief as to the unlawful possession, says:

> "The affiant states that he based the aforesaid belief on information furnished him by Little John Madden, a reputable citizen of Knott County, Kentucky, who stated facts as follows: He told me that they are making liquor somewhere on Dave Hall's possessions and I went to try and find out and as soon as I entered into the house I smelled the mash."

In the cases of Abraham v. Commonwealth, 202 Ky. 491, 260 S. W. 18, 19; Griffith v. Commonwealth, 209 Ky. 143, 272 S. W. 403, and Coleman v. Commonwealth, 219 Ky. 139, 292 S. W. 771, 772, we had before us affidavits, in support of the issuance of search warrants, which contained statements to produce probable cause for the issuing of the warrant in all essential respects the same as the above excerpt from the affidavit in this case for the same purpose. In each of those cases we held that, regardless of the sufficiency of the substance of the statements, none of them fixed or stated any time when the alleged facts happened, and that, since it was necessary for that to be done in order to show whether such conditions were true and coexistent with the time of the issuing of the warrant, they furnished no authority to the issuing officer for believing that the facts attempted

124

to be stated in the affidavit were then true and, consequently, no authority for him to issue the warrant, and which conclusion to our minds is inescapable.

The opinion in the Abraham case referred to the prior one of Commonwealth v. Dincler, 201 Ky. 129, 255 S. W. 1042, wherein the affiant said that "He has brought intoxicating liquor at grocery Mechanic and Upper streets," etc., but he did not state when his purchase or purchases were made, and it was held that the affidavit was insufficient "because it did not fix the time of the purchase made by the affiant sufficiently near to the time of the issuing of the warrant to create probable belief that the same conditions existed, or that similar articles to those purchased were still on the premises or in the possession of defendant." This further comment was made in that opinion:

"So far as the affidavit shows, the sale of liquor to which the affiant refers was made in that house at a time when it was lawful to sell liquor, or at least more than one year next before the finding of the indictment."

In the Abraham prosecution the affiant, upon whose affidavit the warrant was procured, stated therein that he was near to defendant's premises and that he "smelled the odors of intoxicating liquors and mash arising from and coming out of said premises." He nowhere stated when that happened. We therein held that facts obtained through the sense of smell possessed sufficient reliability to create the necessary probable cause for the issuing of the warrant, but that the affidavit was defective in not bringing the discovery made by the affiant through that sense sufficiently near to the date of the issuing of the warrant as to create the conclusion that the same conditions then existed, and for which reason the evidence discovered by executing the warrant was held incompetent.

The affidavit in the Griffith case was in all essential respects the same as the one with which we are now dealing, and the conclusion reached in the prior Dincler and Abraham cases was approved and applied, and in that opinion (which is the latest one on the subject from this court) we said:

"It does not appear when Shade Smith told him this, or when it was that Harve Smith told him this,

or when it was that Harve Smith's boys bought liquor there. These statements furnish no ground for a belief that the law was violated at that time, unless it was shown that the liquor had been bought there so near the time as to warrant the inference that the condition existed at the time the affidavit was made. Griffith v. Commonwealth, 209 Ky. 143, 272 S. W. 403.''

The conclusion in those cases is not without sound reason. The section of our Constitution (10) forbidding searches of places and premises therein set forth was intended to preserve a sacred right of the citizen, and one cherished by the Anglo Saxon people from ancient times. The safeguards contained in that section were, therefore, erected to preserve that right, and no duty is more imperative upon the courts than the one to see that such safeguards are observed. If affidavits of the nature and kind now under consideration should be held to be sufficient to issue a warrant for a search, then the conduct of the citizen throughout the entire period of his past life would furnish grounds for continuous and repeated searches of his premises, if, perchance, he had been guilty during that period of harboring on his premises contraband articles which it was lawful to discover by a search warrant, if properly obtained.

Of course, no one contends that the precise date of the occurrence of the necessary facts should be given by the affiant, but they should be so near in point of time to the making of the affidavit and the issuance of the search warrant to create the reasonable belief that the same conditions described in the affidavit still prevails. The affidavit in this case as well as those in the cases referred to, nowhere, nor in any manner, either by express statement, by inference, or by construction, named or fixed the date when the accusing facts descriptive of the unlawful conditions happened, and in such circumstances there is nothing for a conscientious court to do except to hold the affidavit insufficient. Indeed, the learned Attorney General of the state, who himself briefed this case for the commonwealth, after reviewing the cases supra, says therein: ''We concede that the affidavit in this case is insufficient (based on above opinions) and for that reason the case should be reversed.'' We agree with that statement and, therefore, hold that none of the evidence given by the official witnesses who made the search and whose discoveries were testified to was com-

petent, and there being no other evidence as to the guilt of defendants, their motion for a peremptory instruction of acquittal should have been given.

Error 2, argued and relied on, though unnecessary to be passed upon, in view of what we have already said, is likewise meritorious. It could serve no useful purpose to reiterate even the substance of the discoveries made by the prosecuting witnesses. It is sufficient to say that to our minds the testimony disclosed no new physical conditions beyond what existed at the close of a prior search of the same premises some two or three weeks before the one here involved was made. At that prior search a still in the possession of Hall was cut to pieces and tubs and barrels emptied and mash poured out. The discovered facts testified to on the instant trial were practically the same as existed after the officers made their first search of the same premises some two or three weeks earlier when they destroyed the physical evidence of guilt, and about the only proven fact, from which even a surmise of appellants' guilt could be drawn, is the one that they were present at Hall's house when the officers visited it the second time but without a warrant, and, perhaps one of them was also present the next morning when the search was actually made. They were neighbors and, so far as the record shows, were close and intimate friends, and there is nothing unnatural or uncommon, for people so situated to visit each other, and we are unable to see wherein a conclusion of guilt may be drawn from such fact alone. It may be that appellants are guilty, since they may have been interested in the still that Hall had undoubtedly operated in the past, and if so, and their connection therewith was within twelve months prior to the finding of the indictment, they could be tried therefor under this accusation. The record, however, contains no such proof, and we therefore conclude that the argument in support of this error is also well founded and should have been so held by the court.

Wherefore, the motion for the appeal is sustained, the appeal is granted, and the judgment is reversed, with directions to set it aside and grant the new trial, and for proceedings consistent with this opinion.